FILED

2007 AUG 24 P 4: 11

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| COOPER TECHNOLOGIES COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JON W. DUDAS, ) <br> Under Secretary of Commerce for ) <br> Intellectual Property and Director of the ) <br> United States Patent and Trademark ) <br> Office, ) <br> ) <br> Defendant. ) | Civil Action No. 1:07 cv 853 <br> GBL/BRP |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Cooper Technologies Company ("Cooper") files its Original Complaint against defendant Jon W. Dudas, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office ("Director"), and alleges as follows:

### THE PARTIES

1.  Plaintiff Cooper is a corporation organized and incorporated under the laws of the State of Delaware, with its principal place of business located at 600 Travis Street, Houston, Texas 77002.

2.  Defendant Jon W. Dudas is the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office ("PTO"). The PTO is headquartered in Alexandria, Virginia. The Director is being sued in his official capacity.

### THE PATENT-IN-SUIT

3.  Cooper is the sole owner of U.S. Patent No. 6,984,791 ("the '791 Patent") entitled "Visual Latch Indicator Arrangement for an Electrical Bushing and Terminator," by virtue of assignments from the inventors and predecessors in interest. Those assignments are recorded at

the United States Patent and Trademark Office ("PTO") at Reel No. 7055, Frame No. 0697; Reel No. 016403, Frame No. 0790; and Reel No 016403, Frame No. 0713. The '791 Patent is involved in an *inter partes* reexamination, Serial Number 95/000,209 ("the '209 *inter partes* Reexamination"), that is the subject of this lawsuit.

## JURISDICTION AND VENUE

4. This Complaint is a challenge to the Defendant's implementation of a federal statute governing the applicability of *inter partes* patent reexamination proceedings, 35 U.S.C. §§ 311-318, and the PTO's acceptance of a request for an *inter partes* reexamination of the '791 Patent, which became the '209 *inter partes* Reexamination." This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 2201, and 5 U.S.C. §§ 701-706.

5. After the '209 *inter partes* Reexamination was ordered by the PTO, Cooper challenged the PTO's determination that the '791 Patent issued from an "original application" and filed a petition to terminate the reexamination proceeding under 37 C.F.R. § 1.182. *See Inter Partes* Reexamination 95/000,209 File History, Receipt of Petition in a Reexam (May 8, 2007). The PTO denied Cooper's petition. *See Inter Partes* Reexamination 95/000,209 File History, Decision Denying Petition 13 (June 19, 2007). The PTO's decision was a final agency action within the meaning of 5 U.S.C. § 704. *Id.*

6. Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(e), because the Director has committed acts in the Eastern District of Virginia.

## FACTUAL AND STATUTORY BACKGROUND

7. Congress established the *inter partes* reexamination procedure in §§ 4601-4608 of the American Inventors Protection Act of 1999, Pub. L. No. 106-113, 113 Stat. 1501, 1501A-567 to 1501A-572, 35 U.S.C. 311-318, (1999) ("AIPA"). The *inter partes* reexamination procedure available under AIPA is substantially different from the *ex parte* reexamination procedure

otherwise available under 35 U.S.C. §§ 301-307. In particular, the *inter partes* reexamination procedure affords a third-party requester the right to participate in the reexamination proceeding after the PTO has issued a first Office Action. *See* 35 U.S.C. § 314. In an *inter partes* reexamination proceeding, the third-party requester is also afforded the opportunity to participate in an appeal of any decision adverse to patentability. *See* 35 U.S.C. § 315. This ability to participate beyond filing a request for reexamination can be contrasted to the *ex parte* reexamination procedure where, with one minor exception, (*i.e.*, where the requestor can file a reply if the patent owner files a statement in response to the request), the third-party requester's participation in the reexamination proceeding ends with the filing of a request for reexamination. *See* 35 U.S.C. §§ 304-306.

8. Section 4608 of the AIPA states that "this Act . . . shall apply to any patent that issues from an original application filed in the United States on or after [November 29, 1999]." The term "original application" was not defined in the AIPA. The meaning of "original application" is the primary issue involved in this lawsuit.

9. The PTO has implemented the AIPA under an erroneous interpretation of § 4608 published in the OFFICIAL GAZETTE of April 11, 2000. The PTO's notice in the OFFICIAL GAZETTE stated that "[t]his notice addresses several of the changes created by the [AIPA] which do not require rulemaking to implement." The notice in the OFFICIAL GAZETTE goes on to state:

> The phrase "original application" is interpreted to encompass utility, plant and design applications, including first filed applications, continuations, divisionals, continuations-in-part, continued prosecution applications (CPAs) and the national stage phase of international applications. This interpretation is consistent with the use of the phrase in 35 U.S.C. 251 and the federal rules pertaining to reexamination. In addition, section 201.04(a) of the Manual of Patent Examination and Procedure (MPEP) defines an original application as ". . . an application which is not a reissue application." Section 201.04(a) of the MPEP further states that "[a]n original application may be a first filing or a continuing application." Therefore, the Optional Inter Partes Reexamination Procedure is

applicable to patents which issue from all applications (except for reissues) filed on or after November 29, 1999. A patent which issued from an application filed prior to November 29, 1999 with a request for continued examination (defined in section 4403 of the Act) on or after May 29, 2000, however, is not eligible for the Optional Inter Partes Reexamination Procedure. A request for continued examination is not considered a filing of an application.

10. In May, 2004, the erroneous interpretation in the April 11, 2000 OFFICIAL GAZETTE was formalized by incorporation into the MANUAL OF PATENT EXAMINATION PROCEDURE ("MPEP") at § 2611, which is worded in a virtually identical way to the OFFICIAL GAZETTE notice. *See* MPEP. Blue Pages, p. 48 (8th ed., Rev. 2, May 2004) ("New Chapter 2600 added to set forth policies and procedures pertaining to optional *inter partes* reexamination").

11. Contrary to the statement in the OFFICIAL GAZETTE notice and MPEP, that the PTO's interpretation of "original application" is consistent with 35 U.S.C. § 251, that term does not even appear in 35 U.S.C. § 251, which uses the term "original patent" instead. What the PTO did not mention is that the phrase "original application" does appear in 35 U.S.C. §121, which states that "a divisional application which complies with the requirements of section 120 of this title shall be entitled to the benefit of the filing date of the original application." In other words, according to the only section of the patent statute where the term "original application" appears, that term refers to the *first-filed* application upon which a later application or applications are based. This interpretation is also consistent with the plain meaning of the phrase "original application," Indeed, the dictionary, defines the term "original" to mean "1. Preceeding all others in time; first." THE AMERICAN HERITAGE COLLEGE DICTIONARY 981 (4th ed. 2002).

12. The '791 Patent issued from a continuation application filed April 14, 2003, which claims priority to a continuation application that, in turn, claims priority to an "original application" filed on June 20, 1994. A "continuation" application is a later application based on

an earlier-filed application, which contains an identical disclosure to that of the earlier-filed application. Under 35 U.S.C. § 120, a continuation application is entitled to the benefit of the filing date of the earlier application. Therefore, the filing date of the "original application," as that term is properly interpreted, that corresponds to the '791 Patent, is June 20, 1994. As a result, the '791 Patent is not properly subject to *inter partes* reexamination under the AIPA, which only applies to patents issuing from "original applications" filed after November 29, 1999.

13. Cooper sued Thomas & Betts Corporation ("T&B") for infringement of U.S. Patent No. 6,504,103 ("the '103 Patent") and the '791 Patent, on June 14, 2006, in the United States District Court for the Eastern District of Texas ("Texas District Court"). The original complaint was served on October 11, 2006, after of settlement negotiations between the parties were unsuccessful. The case is identified by cause number 2:06-CV-242-TJW (hereinafter the "Underlying Patent Lawsuit").

14. T&B has done everything within its power to derail the litigation. On December 21, 2006, T&B filed requests with the PTO to reexamine both patents that were asserted by Cooper in the Underlying Patent Lawsuit. These requests included a request for *inter partes* reexamination of the '791 Patent and a request for *ex parte* reexamination of the '103 Patent. The PTO accepted T&B's request for *ex parte* reexamination and assigned it Serial Number 90/008,386 ("the '386 *ex parte* Reexamination"). The PTO rejected T&B's initial request for the *inter partes* reexamination. However, after T&B filed a corrected request on January 26, 2007, the PTO accepted the request and assigned it Serial Number 95/000,209 ("the '209 *inter partes* Reexamination").

15. On March 15, 2007, the PTO granted T&B's request for the '386 *ex parte* Reexamination. The PTO has not issued a first office action in the '386 *ex parte* Reexamination.

On April 13, 2007, the PTO granted T&B's request for the '209 *inter partes* Reexamination and on the same day mailed a first office action. On May 8, 2007, Cooper filed its "Petition Under 37 C.F.R. § 1.182," mentioned above in ¶ 5, to terminate the '209 *inter partes* Reexamination, along with a request for an extension of time to respond to the initial office action pending the petition. The PTO granted a one-month extension for filing a response on May 31, 2007. After T&B filed an opposition to the petition, the PTO denied Cooper's petition in a decision dated June 19, 2007. On July 13, 2007, Cooper responded to the initial office action. T&B then filed a response to the Cooper response on August 13, 2007.

16. After the PTO granted T&B's requests for reexamination, T&B filed a motion on April 19, 2007, to stay the litigation based on the reexaminations. The motion has not yet been ruled on by the court. The court held a scheduling conference on June 25, 2007, and set a number of deadlines including a trial date in September 2008. The case is proceeding with documents being filed and produced by both sides.

17. On July 26, 2007, T&B filed a lawsuit against Cooper in the same court, *Thomas & Betts v. Cooper Power Systems, Inc.* No. 07-CV-313-TJW (E.D. Tex), alleging that Cooper infringed three patents that are unrelated to the patents asserted by Cooper in its lawsuit although they deal with other features on similar types of electrical connectors. T&B filed a motion to consolidate this new lawsuit with the Underlying Patent Lawsuit on August 23, 2007.

18. On June 26, 2007, Cooper filed a petition to suspend the '209 *inter partes* Reexamination so that discovery of a number of individuals who supplied declarations in support of T&B's reexamination requests could be deposed in the Underlying Patent Lawsuit, after T&B refused to provide Cooper with access to these individuals. In an opposition to Cooper's petition filed on July 30, 2007, T&B made unfounded allegations that Cooper committed inequitable

conduct in another related application by failing to provide the PTO with sufficient information about the rejections in the first office action in the '209 *inter partes* Reexamination. This other Cooper patent application was also a continuation of the "original application" filed on June 20, 1994, which is the "original application" for the patents in the Underlying Patent Lawsuit as well. T&B's allegations resulted in the illogical result of the PTO withdrawing Cooper's other application from issuing as a United States patent four days before the patent was scheduled to issue on August 14, 2007, as U.S. Patent 7,256,352 ("the withdrawn '352 Patent"). If the PTO had not illegally allowed the '209 *inter partes* Reexamination to proceed as an *inter partes* reexamination, T&B would not have had the opportunity to present its unfounded allegations and the withdrawn '352 Patent would have been allowed to issue in normal course.

19. The '791 Patent is not the proper subject of an *inter partes* examination under the AIPA, because the original application for the '209 *inter partes* Reexamination was filed on June 20, 1994, which is prior to the November 29, 1999, cut off for *inter partes* reexaminations. Thus, the PTO's acceptance of T&B's request in accord with its revision of the MPEP and prior notice in the OFFICIAL GAZETTE was improper, and the PTO's denial of "Petition Under 37 C.F.R. § 1.182" to terminate the '209 *inter partes* Reexamination, were erroneous.

## COUNT I
## (ADMINISTRATIVE PROCEDURE ACT-UNLAWFUL AGENCY DECISION)

20. Plaintiff restates and herein incorporates by reference the allegations of the preceding paragraphs.

21. The PTO, through its implementation of the AIPA § 4608 in § 2611 of the MPEP, interprets the phrase "original application" to encompass continuation applications, divisional applications, continuations-in-part, continued prosecution applications (CPAs) and national stage phases of international applications. Thus, even though a continuation application was filed with

the PTO after November 29, 1999, it claims priority to original or first-filed application that was filed before November 29, 1999. Thus, the PTO's erroneous interpretation permits *inter partes* proceedings in violation of AIPA.

22. The PTO's implementation of AIPA § 4608 in MPEP § 2611 should therefore be set aside under 5 U.S.C. § 706 as arbitrary, capricious, and contrary to law in that it violates AIPA § 4608.

23. The PTO's implementation of AIPA § 4608 in the April 11, 2000, OFFICIAL GAZETTE should be set aside under 5 U.S.C. § 706 as arbitrary, capricious, and contrary to law for the same reasons.

## COUNT II
## (ADMINISTRATIVE PROCEDURE ACT–IMPROPER RULEMAKING)

24. Plaintiff restates and herein incorporates by reference the allegations of the preceding paragraphs.

25. The PTO's implementation of AIPA § 4608 in MPEP § 2611 constitutes a rule under 5 U.S.C. § 551(4) because it is an agency statement of general applicability and future effect designed to implement, interpret, or prescribe law or policy.

26. The PTO's implementation of AIPA § 4608 in MPEP § 2611 should be set aside under 5 U.S.C. § 706 because the PTO failed to abide by the rulemaking procedures prescribed in 5 U.S.C. § 553.

27. The PTO's interpretation of AIPA § 4608 is a substantive rule subject to the rulemaking procedures of 5 U.S.C. § 553 because it effects a change in existing law and affects the rights of patent owners. More specifically, Part I of 37 C.F.R. at § 1.325, provides that mistakes not affording legal grounds for reexamination will not be corrected. Section 1.351 of 37 C.F.R. further provides that "[a]ll amendments to the regulations in this part will be published

in the *Official Gazette* <u>and</u> in the Federal Register" (emphasis added). Section 4608 of the AIPA does not create legal grounds for an *inter partes* reexamination of "original applications" filed before November 29, 1999. Thus, according to 37 C.F.R. §§ 1.325 and 1.351, such applications should not be subject to *inter partes* reexamination, absent an amendment to the regulations published in the OFFICIAL GAZETTE and the Federal Register. The PTO's interpretation of the phrase "original application" in MPEP § 2611 fails to satisfy the second requirement under the PTO's own rules for amending its rules.

## COUNT III
## (INJUNCTION TERMINATING THE '209 REEXAMINATION AND BARRING CERTAIN FUTURE *INTER PARTES* REEXAMINATIONS)

28. Plaintiff restates and herein incorporates by reference the allegations of the preceding paragraphs.

29. Absent injunctive relief from this Court, the Director has granted T&B's reexamination request and will cause the reexamination of the '791 Patent to proceed under the *inter partes* reexamination procedure set forth in 35 U.S.C. §§ 311-18 and 37 C.F.R. §§ 1.902-1.997. Such a proceeding is improper, for reasons stated above.

30. The conduct of the Director has already caused immediate and irreparable harm, and threatens to cause additional immediate and irreparable harm, to Cooper from which it has no adequate remedy at law. Proceeding with the '209 *inter partes* Reexamination has and will continue to severely limit and irreparably affect Cooper's legal rights. If the law were applied properly, then the '791 Patent could only be reexamined under the *ex parte* procedure, which would preclude T&B any further participation in the proceeding after the PTO's first Office Action issues. However, if the PTO proceeds under the improper *inter partes* route, T&B has been and will continue to be able to participate in the '209 *inter partes* Reexamination– significantly impairing Cooper's procedural rights, and increasing Cooper's burdens and

expenses in defending its patent. Moreover, under the improper *inter partes* procedure, Cooper has been and will continue to be denied the right to conduct an interview with the patent examiner in charge of the reexamination of the '209 patent. *See* 37 C.F.R. § 1.955. In contrast, under the *ex parte* reexamination procedure, Cooper would be given the right to conduct such interviews. *See* 37 C.F.R. § 1.560. Furthermore, T&B's continued participation in the '209 *inter partes* Reexamination will cause Cooper to make additional statements regarding the scope of the patent claims–statements that Cooper would not have to make if the proceeding were *ex parte*. Such statements will irrevocably become part of the record and be used by courts, including the Texas District Court in the Underlying Patent Lawsuit, to interpret the scope of the claims of the '791 Patent. Accordingly, under 5 U.S.C. § 706, injunctive relief is warranted.

## COUNT IV
## (DECLARATORY JUDGMENT ACTION)

31. Plaintiff restates and herein incorporates by reference the allegations of the preceding paragraphs.

32. The PTO's implementation and interpretation of AIPA § 4608 is arbitrary and capricious and contrary to law for the reasons set forth above, and should be declared as such under 28 U.S.C. § 2201 and 5 U.S.C. § 706.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court:

A. Declare, adjudge and decree that the PTO's interpretation of the term "original application" in MPEP at § 2611 and in the OFFICIAL GAZETTE notice is arbitrary, capricious, and contrary to law, and is set aside as such;

B. Issue preliminary and permanent injunctions directing Defendant Director to terminate the '209 Reexamination;

C.  Issue preliminary and permanent injunctions directing Defendant Director to refrain from accepting any future requests for *inter partes* reexamination relating to the '791 Patent;

D.  Issue preliminary and permanent injunctions directing Defendant Director to refrain from accepting any future requests for *inter partes* reexamination relating to any application having an effective filing date prior to November 29, 1999; and

E.  Such additional relief as this Court deems equitable and just.

Dated: May 4, 2007

Respectfully submitted,

By: /s/ David M. Foster
David M. Foster
Virginia Bar No. 20799
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, DC 20004-2623
Phone: 202.662.0200
Fax: 202.662.4643

OF COUNSEL:

Attorneys for Cooper Technologies Company

Mark E. Ungerman
Thomas S. Hahn
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, DC 20004-2623
Phone: 202.662.0200
Fax: 202.662.4643

Paul E. Krieger
Robert S. Harrell
James Beebe
FULBRIGHT & JAWORSKI L.L.P.
Fulbright Tower
1301 McKinney Street, Suite 5100
Houston, Texas 77010
Phone: 713.651.5151
Fax: 713.651.5246

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 4(i)(l) and 37 C.F.R. §§ 104.2 and 104.12, a true and correct copy of the Complaint, attached Summons, and Disclosure Statement pursuant to Local Rule of Civil Procedure 7.1 in the matter of *Cooper Technologies Company* v. *Jon W. Dudas* has been sent by certified mail return receipt requested on this 24th day of August, 2007 to the following:

Civil Process Clerk
Office of the United States Attorney for the Eastern District of Virginia
2100 Jamieson Ave
Alexandria, VA 22314

Attorney General Alberto R. Gonzales
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Jon W. Dudas, Under Secretary of Commerce for Intellectual Property and
    Director of the United States Patent and Trademark Office
c/o General Counsel, United States Patent and Trademark Office
P.O. Box 15667
Arlington, VA 22215

/David M. Foster/

A courtesy copy of the Complaint and attached Summons in the matter *of Cooper Technologies Company* v. *Jon W. Dudas* has been hand delivered on this 24th day of August, 2007 to:

Office of the Solicitor
Room 10B20
Madison Building East
600 Dulany Street
Alexandria, Virginia

/David M. Foster/