IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

COOPER TECHNOLOGIES CO.,          )
                                   )
            Plaintiff,             )
                                   )
      v.                           )          1:07cv853  (LMB/BRP)
                                   )
JOHN W. DUDAS, Director of the     )
United States Patent and           )
Trademark Office                   )
                                   )
            Defendant,             )
                                   )
THOMAS & BETTS CORP.,              )
                                   )
            Defendant-Intervenor.  )

## MEMORANDUM OPINION

For the reasons briefly stated in open court, the Court has
held that the United States Patent and Trademark Office's
("Patent Office") interpretation of the term "original
application" in the American Inventor's Protection Act of 1999 to
include continuation applications was not arbitrary, capricious,
or contrary to law.  Accordingly, the Court has denied
plaintiffs' Motion for Summary Judgment and has granted
defendant's Motion for Summary Judgment and defendant-
intervenor's Motion for Summary Judgment.  This memorandum
opinion expands upon the basis for the Court's decision.

## Background

I.    The _Inter Partes_ Reexamination Procedure

In 1980, Congress created an administrative procedure, the
_ex parte_ reexamination, allowing for review of the validity of an

existing patent.  See 35 U.S.C. §§ 301-07.  Under that procedure, a third party could challenge the validity of a patent by notifying the Patent Office of issues bearing on the validity of the patent, but which had not been considered during the initial examination.  Beyond the initial request for a reexamination of the patent's validity, however, the procedure did not allow the third party to participate in the reexamination process.

As part of the American Inventor's Protection Act of 1999 ("AIPA"), Congress created the inter partes reexamination procedure to provide a greater role for third parties in the reexamination process.  See 35 U.S.C. §§ 311-18.  Under the AIPA, after a reexamination is initiated, the requestor may (1) submit a written comment to the patent owner's response to an "office action" issued by the Patent Office, (2) appeal an adverse decision by a patent examiner to the Board of Patent Appeals and Interferences, and (3) brief and argue its position before the Board.  See Sony Computer Entm't Am., Inc. v. Dudas, No. 1:05cv1447, 2006 WL 1472462, at *4 (E.D. Va. May 22, 2006).  The inter partes reexamination procedure was designed to reduce costly invalidity litigation in district courts by funneling these disputes to the Patent Office.[1]  Id.

The AIPA provided for prospective application of the inter

---

[1] If the third party requestor were to lose in an inter partes reexamination, it may not initiate a civil action or a second reexamination proceeding.  See 35 U.S.C. § 315(c).

2

partes reexamination procedure:

> [T]his subtitle and the amendments made by this
> subtitle shall take effect on the date of the enactment
> of this Act [November 29, 1999] and shall apply to any
> patent that issues from an original application filed
> in the United States on or after that date.

AIPA § 4608, Pub. L. No. 106-113, 113 Stat. 1501, 1501A-572.

Neither the statute nor the legislative history defined the

phrase "issues from an original application."  On April 11, 2000,

the Patent Office published a notice in its Official Gazette

setting out its interpretation of "original application":

> The phrase "original application" is interpreted to
> encompass utility, plant and design applications,
> including first filed applications, continuations,
> divisionals, continuations-in-part, continued
> prosecution applications (CPAs) and the national stage
> phase of international applications.  This
> interpretation is consistent with the use of the phrase
> in 35 U.S.C. 251 and the federal rules pertaining to
> reexamination.  In addition, section 201.04(a) of the
> Manual of Patent Examination and Procedure (MPEP)
> defines an original application as "an application
> which is not a reissue application."  Section 201.04(a)
> of the MPEP further states that "[a]n original
> application may be a first filing or a continuation
> application."  Therefore, the Optional Inter Partes
> Reexamination Procedure is applicable to patents which
> issue from all applications (except for reissues) filed
> on or after November 29, 1999.[2]

(Alternation in original).

Under the Patent Office's interpretation of the AIPA, a

third party may request an inter partes reexamination proceeding

---

[2] This interpretation was later memorialized in § 2611 of
the Patent Office's Manual of Patent Examining Procedure
("MPEP").

3

for any patent that issued from any application for a patent, other than a reissue application, so long as the application was filed after November 29, 1999.

II.  The Present Litigation

Plaintiff Cooper Technologies Company ("Cooper"), a Delaware corporation with its principal place of business in Houston Texas, owns U.S. Patent No. 6,984,791 (the '791 patent) entitled "Visual Latch Indicator Arrangement for an Electrical Bushing and Terminator." The parties agree that the '791 patent was issued from Application No. 10/412,683 (the '683 application), which was filed on April 14, 2003.

The '683 application was the last in a series of continuation applications filed by Cooper.[3] The '683 application claimed priority to Application No. 10/198,963 (the '963 application) filed on July 22, 2002, which claimed priority to Application No. 08/821,760 (the '760 application) filed on March 20, 1997, which claimed priority to Application No. 08/262,460 (the '460 application), filed on June 20, 1994.[4]

On January 10, 2006, Cooper filed suit against the

---

[3] A continuation application is an application that covers the same invention disclosed in a previously filed application, but adds a new set of claims. See MPEP § 201.07. Under 35 U.S.C. § 120, a continuation application may claim priority back to the filing date of the earlier-filed application.

[4] Cooper abandoned both the '963 and the '460 applications. The '760 application issued as U.S. Patent No. 6,504,103 (the '103 patent) on January 7, 2003.

4

defendant-intervenor, Thomas & Betts Corporation ("Thomas & Betts"), in the Eastern District of Texas, alleging infringement of the '791 and '103 patents.  See Cooper Tech., Inc. v. Thomas & Betts Corp., No. 2:06cv242 (E.D. Tex.).

On December 21, 2006, Thomas & Betts filed a request with the Patent Office for inter partes reexamination of the '791 patent.  The Patent Office assigned Control No. 95/000,209 to the request, which the parties refer to as "the '209 proceeding."  On April 13, 2007, the Patent Office granted the request for reexamination and issued an initial office action concluding that claims 1 through 30 of the '791 patent were invalid.[5]

On May 8, 2007, Cooper filed a petition with the Patent Office to terminate the inter partes reexamination proceeding, arguing that the '791 patent did not issue from "an original application" filed after November 29, 1999.  Cooper instead identified the '460 application, filed on June 20, 1994, as the operative "original application" under the AIPA.  On June 19, 2007, the Patent Office issued a decision denying the petition.

Cooper seeks review of that decision in the complaint filed in this Court under the Administrative Procedure Act, 5 U.S.C. § 706, arguing that the Patent Office's interpretation of the AIPA

---

[5] Shortly thereafter, Thomas & Betts sought a stay of the litigation in Texas while the inter partes reexamination was pending before the Patent Office.  The district court has not ruled on that request.

was arbitrary, capricious, and contrary to law and that its implementation of the AIPA constitutes improper rulemaking. Cooper seeks declaratory relief, an injunction directing the Patent Office to terminate the '209 proceeding, and an injunction barring the Patent Office from undertaking similar inter partes reexaminations.

The Court subsequently granted Thomas & Betts's Motion to Intervene.

### Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1985).  The Patent Office's interpretation of the AIPA must be affirmed unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).[6]

### Discussion

I.   Statutory Text

The "starting point in every case involving construction of a statute is the language itself."  Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1425 (Fed. Cir. 1988) (internal quotation and citation

---

[6] The parties dispute the level of deference this Court must give to the Patent Office's construction of the term "original application."  To avoid an unnecessary legal determination, the Court will not tether its analysis to any measure of deference to the Patent Office, and will consider the issues de novo.

6

omitted).  Cooper asserts that the term "original application"
has a single standalone meaning.  Specifically, it argues that
"original application" means the first application in a series of
applications – _i.e._, the first application in which the invention
was disclosed – and does not refer to any later filed
continuation applications.  Under Cooper's construction, the '460
application functions as the operative original application and,
because it was filed years before the effective date of the AIPA,
the Patent Office has no authority to conduct an <u>inter</u> <u>partes</u>
reexamination of the '791 patent.

Cooper's position fails for two reasons.  First, by viewing
"original" solely as an adjective modifying the noun
"application," Cooper's focus is too narrow.  The term "original
application" must be read in tandem with the other parts of the
statute.[7]  The AIPA provides that the <u>inter</u> <u>partes</u> reexamination
procedure "shall apply to any patent that <u>issues from an original</u>
<u>application</u> filed [after November 29, 1999]" (emphasis added).
Placing "original application" in context, the question before
the Court is what Congress intended when it limited the <u>inter</u>
<u>partes</u> reexamination procedure in the AIPA to patents that
"issue[] from an original application."

---

[7] <u>See</u> 2A <u>Sutherland Statutory Construction</u> § 47.16 (7th ed.
2007) ("[T]he meaning of doubtful words may be determined by
reference to their relationship with other associated words and
phrases.") (footnote omitted).

If the Court adopted Cooper's construction, it would be
forced to conclude that the '791 patent "issue[d] from" the '460
application, however, the record is clear that no patent ever
issued from the '460 application.  In fact, the Patent Office
closed that proceeding after Cooper had abandoned that
application.  Rather, the record unambiguously demonstrates that
the '791 patent issued from an entirely separate proceeding – the
'683 application.[8]  See Bristol-Myers Squibb Co. v. Pharmachemie
B.V., 361 F.3d 1343, 1348 (Fed. Cir. 2004) ("The '955
continuation application . . . began a new proceeding in which
all the original claims of the '989 application were once again
presented for examination.") (emphasis added).

Second, Cooper's position ignores the settled meaning of the
term "original application" as used by practitioners in patent
law.  More than 25 years before the enactment of the AIPA, the
Patent Office announced a clear definition of "original
application" for purposes of evaluating patent applications:

> "Original" is used in the patent statute and rules
> to refer to an application which is not a reissue
> application.  An original application may be a first

---

[8] The major benefit a patent owner may obtain from a
grandparent or, in this case, great grandparent application is
that the owner may claim the filing date of the first filed
application when seeking damages for infringement of the patent.
Cooper's '683 application gets the benefit of the filing date of
its '460 application under 35 U.S.C. § 120.  Nevertheless, each
continuation application began a new proceeding, as shown by the
Patent Office's assignment of a unique serial number to each
continuation application.

filing or a continuing application.

MPEP § 201.04(a) (5th ed. 1983). The same definition continues to be used today. See MPEP § 201.04(a) (8th ed. 2001). Given this consistent usage, the Court must presume that the Patent Office's definition in the MPEP has entered the modern parlance of patent law. See Patlex Corp. v. Mossinghoff, 758 F.2d 594, 606 (Fed. Cir. 1985) (noting that the detailed rules and regulations in the MPEP "describe procedures on which the public can rely"). It must also presume that Congress was aware of this definition and that it adopted it in the AIPA. See 2A Sutherland Statutory Construction § 47.29 ("In the absence of legislative intent to the contrary, or other overriding evidence of a different meaning, technical terms or terms of art used in a statute are presumed to have their technical meaning.") (footnotes omitted).

Accordingly, the Court finds that the Patent Office's interpretation of "original application" in the AIPA is fully consistent with the term's established meaning in patent law.

II.   Congressional Intent

The Court must next examine other provisions in the patent code to see whether "Congress meant something other than what it said statutorily." Ethicon, 849 F.2d at 1426. Upon such an examination, the Court finds that the Patent Office's definition of "original application" is not inconsistent with other

statutory pronouncements.

The Patent Act references two types of patents – original patents and reissue patents. Unlike an original patent, which discloses a new invention, a reissue patent is a patent that corrects errors in a previously issued patent. When filing a reissue application, a patent owner essentially asks the Patent Office to fix a mistake in an issued patent, and "the Director shall . . . reissue the patent for the invention disclosed in the original patent." 35 U.S.C. § 251; see also § 252 ("The surrender of the original patent shall take effect upon the issue of the reissued patent. . . .") (emphasis added). The Act's fee provision also adopts this distinction between applications for patents. Compare 35 U.S.C. § 41(a)(1)(A) (establishing the filing fee for "each application for an original patent,") with § 41(a)(4)(A) (establishing the filing fee for "each application for a reissue of a patent."). There is no distinction made between first filed applications and continuation applications. The Patent Office's interpretation of the term "original application" in MPEP § 201.04(a) – that any application that is not a "reissue application" is, by default, an "original application" – is entirely consistent with the Patent Act. As shown by the Official Gazette's citation to 35 U.S.C. § 251, the Patent Office is simply using "original application" and "reissue application" as shorthand for "an application for an original

patent" and an "application for a reissue patent."   This
nomenclature was present in other Patent Office regulations
existing at the time.   Compare 37 C.F.R. § 1.16(a) (1999) ("each
application for an original patent") with § 1.16(b),(c),(d) ("an
original application"); see also 37 C.F.R. § 1.179 (1999)
(interchanging "an application for a reissue" and "the reissue
application").

Under this established understanding, Cooper's first filed
application, the '460 application, is an original application.
However, it is not the original application from which the '791
patent issued.   The original application from which the '791
patent issued is the '683 application.

Cooper's lone citation to 35 U.S.C. § 121 to show a contrary
congressional intent – that "original application" refers to the
first application in a chain of applications — is unpersuasive.
That section provides:

> If two or more independent and distinct inventions are
> claimed in one application, the Director may require
> the application to be restricted to one of the
> inventions.   If the other invention is made the subject
> of a divisional application which complies with the
> requirements of section 120 of this title it shall be
> entitled to the benefit of the filing date of the
> original application.

(emphasis added).   It is clear that the use of "original
application" is limited to the context of this section,
specifically referring to the source of the invention in the
divisional application - the earlier-filed restricted

application.

There is no other use of the term "original application" in the patent statute, nor evidence in this record, indicating that Congress intended to announce a broad definition of "original application" in Section 121.  This conclusion is confirmed by the omission of "original application" in the preceding statutory section, which directly addresses patent applications that claim priority to an earlier-filed and still-pending application. Rather than using "original application," Section 120 uses "first application":

> An application for patent for an invention disclosed .
> . . in an application previously filed . . . ., which is
> filed by an inventor or inventors named in the
> previously filed application shall have the same
> effect, as to such invention, as though filed on the
> date of the prior application, if filed before the
> patenting or abandonment of or termination of
> proceedings on the <u>first application</u> or on an
> application similarly entitled to the benefit of the
> filing date of the <u>first application</u> . . . .

35 U.S.C. § 120 (emphasis added).  If Congress intended the term "original application" to refer broadly to the "first application," it could have used "original application" in this section.  Omission of that term further supports the Patent Office's argument that "original application," when standing alone, refers in shorthand form to any application for an original patent, and not to the first filed application in a series of continuation applications.

III. Policy Considerations

Congress's overriding objective in creating the _inter_ _partes_
reexamination procedure was to create "a viable, economically
attractive alternative to litigation." _Sony Computer_, 2006 WL
1472462, at *4.  Cooper's position contravenes this purpose
because it would force a number of third parties to initiate
costly and time-consuming civil litigation in lieu of an
administrative procedure.[9]

Furthermore, Cooper's position is inconsistent with the
typical operation of newly-enacted statutes.  The AIPA grants
procedural rights to third parties to participate in
reexamination proceedings before the Patent Office.  Recognizing
the general presumption against retroactive application, see
_Landgraf v. USI Film Products_, 511 U.S. 244, 273 (1994), these
procedural rights could not attach to any patent proceeding that
commenced before the AIPA's effective date of November 29, 1999.
It would be unfair to subject patent owners who submitted their
applications with an understanding of the pre-AIPA legal
landscape to the _inter_ _partes_ reexamination.  By contrast, it is
entirely fair to apply this process to patent owners who
initiated proceedings _after_ November 29, 1999 because those
owners submitted their applications with full knowledge of the

---

[9] At oral argument, counsel for the government reported that
40% of the _inter_ _partes_ reexamination proceedings pending before
the Patent Office involve patents from an application that,
although filed after November 29, 1999, claims priority to an
application filed before that date.

13

rules in effect at that time.

Cooper filed its '683 continuation application on April 14, 2003, well after Congress enacted the AIPA.  Although Cooper's continuation application receives the benefit of the earlier filing date of the '460 application, Cooper does not also receive the benefit of the law in effect on that earlier filing date. Rather, it must prosecute its patent under the law in effect on April 14, 2003.  That law allows for <u>inter partes</u> reexamination of its '791 patent.

Conclusion

For these reasons and those stated in open court, plaintiff's Motion for Summary Judgment has been denied, the defendant's Motion for Summary Judgment has been granted, and the defendant-intervenor's Motion for Summary Judgment has been granted.

Entered this 30th day of November, 2007.

/s/

Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

14